7

J. RUSSELL CUNNINGHAM, State Bar #130578
J. LUKE HENDRIX, State Bar #271424
GABRIEL P. HERRERA, State Bar #287093
DESMOND, NOLAN, LIVAICH & CUNNINGHAM
1830 15th Street
Sacramento, California  95811
Telephone: (916) 443-2051
Facsimile: (916) 443-2651

Attorneys for J. Michael Hopper
Chapter 7 Trustee

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

In re:

JAMES WILLIAM SCOTT,

Debtor.

Case No. 13-21199-D-7
Chapter 7

DNL-4

Date:      June 5, 2013
Time:      10:00 a.m.
Location:  501 I Street, 6th Floor
           Court Room 34
           Sacramento, CA 95814

### MOTION TO APPROVE SALE OF REAL PROPERTY

J. MICHAEL HOPPER ("Trustee"), in his capacity as trustee of the bankruptcy estate of JAMES WILLIAM SCOTT ("Debtor"), hereby moves for authority to sell the bankruptcy estate's interest in certain real property located at 2653 South Kihei Road, Apt. 113, Kihei Maui, Hawaii ("Subject Property") to GREGORY C. FRANKLIN, or his nominees ("Buyer"), for the purchase price of $350,000, free and clear of the liens, encumbrances, and claims of interest of 580 PARKSON ROAD, LLC ("Parkson"), pursuant to 11 U.S.C. Section 363(f)(2) or alternatively 11 U.S.C. Section 363(f)(4), and free and clear of the liens, encumbrances, and claims of interest of GALIPEAU ASSOCIATES, INC., a Delaware corporation ("Galipeau") and A.K. PARTNERS, LLC, a Massachusetts limited liability company ("A.K. Partners") (collectively "Galipeau/A.K.

1

Partners"), pursuant to 11 U.S.C. Section 363(f)(2). In support of his application, Trustee submits the following:

## JURISDICTION AND BACKGROUND

1. This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. § 1409. Consideration of this motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(N).

2. On January 30, 2013, the Debtor commenced the above captioned bankruptcy case by filing a voluntary Chapter 7 petition. Trustee is the duly appointed trustee of the estate.

3. Among the assets of the bankruptcy estate is the Debtor's interest in the Subject Property. The Subject Property is an approximately 890 square foot condominium. The Debtor's schedules identify the value of the Subject Property in the amount of $300,000, subject to a first deed of trust in the approximate amount of $150,000 in favor of Central Pacific Bank ("CPB"); the below-referenced judgment liens of Parkson and Galipeau/A.K. Partners; and a "wild card" exemption under California Code of Civil Procedure Section 703.140(b)(5) in the amount of $23,946.

4. On March 29, 2013, the Court entered an order granting DNL-3, Trustee's application to employ MOFFETT PROPERTIES ("Broker") as the estate's real estate broker to market and sell the estate's interest in the Subject Property, pursuant to a 6% commission fee.

### A. Parkson Judgment

5. Parkson is the judgment creditor and the Debtor is the judgment debtor with respect to a money judgment in the approximate principal amount of $1.3 million, entered in Nevada State District Court (Washoe County) Case No. CV09-02517 on December 22, 2010 ("Parkson Judgment"). Parkson claims that the Parkson Judgment now totals $1,938,091. Certain documents purporting to domesticate the Parkson Judgment in Hawaii were recorded at the State of Hawaii Bureau of Conveyances on March 2, 2011, identified as Document No. 2011-036291. These documents include copies of the following: (1) Exemplified Foreign Judgment; (2) Affidavit of Erica M. Chee; (3) Judgment Pursuant to Order of Court (Parkson Judgment); and (4) Notice of Filing Foreign Judgment. The documents did not include an Exemplification Certificate for the Parkson Judgment. On or about March 29, 2011, after recording the above-referenced documents in Hawaii,

1  Parkson filed a motion in the Washoe County Court to alter or amend the Parkson Judgment. On
2  April 14, 2011, the Washoe County Court entered an "Amended Judgment Pursuant to Order of
3  Court."

### B. Galipeau Judgment

6. Galipeau and A.K. Partners are the judgment creditors and the Debtor is a judgment debtor with respect to a money judgment in the approximate principal amount of $1 million, entered in Nevada State District Court (Clark County) Case No. A581427 on November 30, 2010 ("Galipeau Judgment"), amending a judgment originally entered on May 12, 2010. Certain documents purporting to domesticate the Galipeau Judgment were recorded at the State of Hawaii Bureau of Conveyances on October 3, 2012, identified as Document No. A-46590765. These documents include copies of the following: (1) Notice of Filing of Exemplified Foreign Judgment; (2) Affidavit of Counsel Re Addresses of Plaintiffs and Defendants; (3) Second Amended Judgment (Galipeau Judgment); and (4) Exemplification Certificate from the Clerk of the Clark County Nevada District Court. Galipeau and A.K. Partners contend that the Debtor was personally served with orders of the Nevada and California state courts to appear for examinations to enforce the Galipeau Judgment. Galipeau and A.K. Partners contend that through the petition date the balance due on the Galipeau Judgment, after costs and credits, was $2,238,387.24.

7. As a result of various acts to enforce the Parkson Judgment and the Galipeau Judgment, including the above-described recordings, filings, and service, Parkson and Galipeau/ A.K. Partners claim competing liens against the Kihei Condo.

### C. Stipulation

8. Trustee has been in negotiations with both Parkson and Galipeau/A.K. Partners regarding a stipulation providing for their consent to the proposed sale of the Subject Property and providing for distribution of the sale proceeds, after accounting for the Debtor's exemption, first, to the holders of all allowed or undisputed secured claims that are senior to Parkson and Galipeau/A.K. Partners (including CPB), taxes, and closing costs; second, a reserve for Trustee's administrative expenses associated with the sale; and third, 10% of the net proceeds reserved for the benefit of unsecured creditors, with the remaining 90% held by Trustee for distribution to Parkson and

Galipeau/A.K. Partners pending resolution of their competing claims of lien. To date, the terms of the stipulation have not been finalized and the stipulation is still being circulated for final comments and signatures, but Trustee anticipates filing a stipulation providing consent from Parkson and Galipeau/A.K. Partners to the proposed sale and providing a return to bankruptcy estate. At minimum, Trustee anticipates filing a signed consent from Galipeau/A.K. Partners, which have already confirmed their willingness to consent to the sale and sign a stipulation regarding distribution of the proceeds in the form described above.

## TERMS OF SALE AGREEMENT

Subject to Bankruptcy Court approval and overbidding through conclusion of the sale hearing, Trustee has entered into a sale agreement with Buyer providing for Buyer's purchase of the bankruptcy estate's interest in the Subject Property ("Sale Agreement"). The essential terms of the Sale Agreement include the following:

(1) Buyer shall purchase the bankruptcy estate's interest in the Subject Property for the purchase price of $350,000 cash, payable as follows: (a) $10,000 initial cash deposit due within 48 hours of execution of the Sale Agreement, and an additional $95,000 cash deposit into escrow prior to closing; and (b) the balance of $245,000 financed by new mortgage due at close of escrow;

(2) the sale shall be escrowed by Title Guaranty Escrow Services, Inc., and the escrow agreement requires that Hawaii law govern the escrow and that Hawaii state courts or the United States District Court for the District of Hawaii have exclusive jurisdiction with respect to actions on account of the escrow;

(3) the transfer of the Subject Property shall be "as is" and without representation or warranty with respect to the condition or history of the Subject Property;

(4) as of the date of closing, if applicable, escrow shall prorate real property tax, lease rents, interest on assumed obligations, mortgage and other insurance premiums, tenant rents, maintenance, private sewer, marina, and/or association fees;

(5) closing costs shall be borne by both Trustee and Buyer as provided in Section F-6 of Sale Agreement, including a 50/50 share of escrow fees, and Trustee shall be responsible for

4

recording fees to clear the estate's title, conveyance fees and taxes, and 60% of the premium for standard coverage title insurance; and

### RELIEF SOUGHT

Trustee seeks authority to sell the Subject Property to Buyer free and clear of the claims of interest of Parkson, pursuant to 11 U.S.C. Section 363(f)(2) or alternatively 11 U.S.C. Section 363(f)(4); and Trustee seeks authority to sell the Subject Property free and clear of the liens, encumbrances, and claims of interest of Galipeau/A.K. Partners, pursuant to 11 U.S.C. Section 363(f)(2). Trustee also seeks approval of Broker's 6% commission fee as an administrative expense of the estate, payable out of escrow funds from the sale the Subject Property.

### BASIS FOR RELIEF

Pursuant to 11 U.S.C. § 363(b)(1), a trustee can sell property of the estate after notice and hearing. A sale under Section 363(b)(1) must have a valid business justification and be proposed in good faith. *In re 240 North Brand Partners, Ltd.*, 200 B.R. 653, 659 (9th Cir. BAP 1996). Trustee's proposed sale to Buyer has a valid business justification and is in the best interest of the estate. As noted above, based on his ongoing discussions with Parkson and Galipeau/A.K. Partners, Trustee anticipates executing a stipulation prior to the sale hearing which will account for Trustee's administrative expenses associated with the sale and provide a return to the estate. The Subject Property has been exposed to the market and I have received no higher or otherwise better offer on the Subject Property. Prospective buyers interested in bidding more for the Subject Property will have an opportunity to do so as the property is subject to overbidding through conclusion of the sale hearing. As such, the proposed sale is a good faith effort by Trustee to maximize the net return to the estate on account of the Subject Property.

A.   **11 U.S.C. § 363(f)(2)**

The sale should be approved free and clear of the claims of lien, encumbrance, and interest of Parkson and Galipeau/A.K. Partners. Pursuant to 11 U.S.C. § 363(f)(2), a trustee can sell property of the estate free and clear of any interest in such property of an entity if such entity consents to the sale. As noted above, it is anticipated that Parkson and Galipeau/A.K. Partners will consent to the proposed sale free and clear any interest they claim in the Subject Property.

5

1  Trustee hopes to submit signed consents prior to the sale hearing. At minimum, Trustee will
2  submit a signed consent from Galipeau/A.K. Partners, which have already confirmed their
3  willingness to consent to the sale and stipulate to distribution of the sale proceeds in the form
4  described above in Section C.

5      **B.**    <u>11 U.S.C. § 363(f)(4)</u>

6      In the event that Parkson does not provide consent to the sale prior to the hearing, the sale
7  should be approved free and clear of Parkson's claim interest because Trustee disputes any
8  interest claimed by Parkson. Pursuant to 11 U.S.C. § 363(f)(4), a trustee can sell property of the
9  estate free and clear of any interest in such property of an entity other than the estate, if such
10 interest is in bona fide dispute. The court is not required to resolve the underlying dispute or
11 even determine its probable outcome; the court must merely assesses whether the dispute exists.
12 *See In re Taylor*, 198 B.R. 142 (Bankr. D. S.C. 1996); *In re Oneida Lake Development, Inc.*, 114
13 B.R. 352, (Bankr. N.D.N.Y. 1990) (sale free and clear of liens justified under theory of bona fide
14 dispute even though the debtor in possession had not commenced an adversary proceeding to set
15 aside the liens).

16     In the case at bar, by failing to file an exemplified copy of the Parkson Judgment, Parkson
17 has failed to domesticate the Parkson Judgment in Hawaii. Under Hawaii law, to domesticate a
18 judgment and establish a judgment lien, an exemplified copy of the foreign judgment must be
19 filed with the appropriate Hawaii court. HRS636C-3. Also, under Hawaii law, where statutory
20 language is plain and unambiguous, the court's duty is to give effect to the statute's plain
21 meaning. *In re Kekauoha-Alisa*, 674 F.3d 1083, 1088 (9th Cir. 2012). As noted above, the
22 documents purporting to domesticate the Parkson Judgment did not include an exemplified copy
23 of the Parkson Judgement. As such, Parkson's claim of judgment lien is invalid. Thus, Trustee
24 should be allowed to sell the Subject Property free and clear of Parkson's claim of lien because
25 Trustee has established the existence of a bona fide dispute as to the validity of such lien. *See In*
26 *re Octagon Roofing,* 123 B.R. 583, 590 (N.D. Ill. 1991) (trustee established existence of bona
27 fide dispute as to validity of creditor's mortgage so sale of the property could proceed free and
28 ///

clear of the creditor's interests).

**WHEREFORE** Trustee prays that,

(1) The motion be granted;

(2) Broker's 6% commission fee be allowed as an administrative expense of the estate and that the commission fee be paid out of escrow funds from the sale the Subject Property; and

(3) Such other and further relief as the Court deems necessary and proper.

Dated: May 6, 2013               **DESMOND, NOLAN, LIVAICH & CUNNINGHAM**

By: _____
    **J. LUKE HENDRIX**
    Attorneys for J. Michael Hopper
    Chapter 7 Trustee

7